Francisco Javier Serrano
Reg. #88785-008
FCI #1 Victorville Medium
P.O.Box 3725
Adelanto, CA 92301
PRO SE

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT
REFERENCE ____CrULR 54____
(Rule Number/Section.)

FILED _____ LODGED
RECEIVED _____ COPY

OCT 0 8 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. 2:08-cr-932-PHX-DGC-3 |
| Plaintiff, | DEFENDANT'S REPLY TO NOTICE FILED BY FEDERAL |
| vs. | PUBLIC DEFENDER KEITH J. HILZENDENGER #023685 |
| Francisco Javier Serrano, | INEFFECTIVE ASSISTANCE OF COUNSEL UNDER SMITH |
| Defendant. | VARIANCE -Haines v. Kerner, 440 U.S. 519 (1972) |

Comes now, Francisco Javier Serrano, defendant in Pro Se is hereby filing a reply

to elicit this Court with factual basic that multiple constitutional error, plain

error were committed by Ineffective Assistance of Sentencing Counsel Kristina

Sitton #o23467 attorney for defendant, the BOP continous deprivation defendant

constitutional rights to receive an opportunity for Compassionate Release

Sentence Reduction under 18 U.S.C. § 3582 (c)(1)(A) see Exhibit A, that BOP used

excuses for deny ing defendant's rights to Compassionate Release Sentence Reduction,

Smith Variance - A deportable alien is not eligible for the benefit of 18 U.S.C.

§ 3624 (c), which directs the Bureau of Prisons to the extent practicable, to

assure that prisoners spend part of their sentences under conditions - possibly

including home confinement that will afford the prisoner a reasonable opportunity

to adjust to and prepare for re-entry into the community.

## Exhibit A

Verification of denial for BOP Program Statement No. 5050.50, Compassionate

Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§

3582(c)(1)(A) and 4205(g).

### Quoted Paragraph 2 dated 11/16/2020:

You have served 67% of your sentence.  Presently, you have a detainer with the
Immigration and Customs Enforcement.  All detainers and holds should be resolved
prior to the Warden's submission of a case under 18 U.S.C. 3582(1)(A) or 4205(g).

Material Facts of Deprivation:

A deportable will always have a "detainer" or hold pending Immigration and Custom
Enforcement is viable claim of Cruel and Unusual Punishment, Slavery, and Deprivation
of Due Process Clauses under Eighth, Thirteenth, and Fourteenth Amendment in support
of Ineffective Asstance of Sentencing Counsel in pursuant to 18 U.S.C. § 3624(c)
ground for evidentiary hearing, downward variance.


The Legal United States Supreme Court Column Caselaws > Exhibit B Failure To File
Notice of Appeal and Newly Discovered Evidence:


United States v. Davis, 139 S. Ct. 782 (S. Ct. June 24, 2019); and United States v.
Barrett, 903 F. 3d 166 (2nd Cir. 2018 [vacated and remanded.  No. 186988, 2019 U.S.
LEXIS 4442 (S. Ct. June 28, 2019)]


For all the brothers and sisters who have not kept abreast of Davis, it has set the
legal standard that a person carrying a firearm during and in relation to a crime
of violence may be innocent.  If, however, the Federal Statute falls under the
Residual Clause of 18 U.S.C. § 924(c), there are element clauses under § 924 (c):
THE FORCE CLAUSE [ 18 U.S.C. § 924 (c)(3)(A)] holds that in order to constitute a
ciolent offense,a crime must meet the statutory element of "the use, attempted use,
or threatened use of physical force against the person or property of another."


THE RESIDUAL CLAUSE defines a "crimes of violence" as an offense that, by its nature,
invloves a substantial risk that physical force against the person or property of
another may be used in the course of committing the offense.

2.

The United States Supreme Court on June 24, 2019, declared in Davis that Section §
924 (c)(3)(B)'s Residual clause is "constitutinally vague". In fact, President
Trump's appointee, Hon. Neil Gorsuch, in writing for the majority, stated that,
"A vague law is no law at all.", meaning that those who were charged under the
Residual Clause with carrying a firearm during a crime of violence are now actually
innocent of their 924(c) convictions.

"What this means is that those of you who were charged with conspiracy to commit a
crime of violence for which you receive an additional consecutive sentence of 5, 7,
or 10 years as a result of that 924(c) conviction, can move the Federal Court that
convicted you to vacate your conviction. This is because 924(c) no longer constitutes
a crime if your charging statute falls under the Residual Clause."


Likewise, on June 21, 2019, the Supreme Court handed down a very significant ruling
for those who were arrested for and convicted of merely possessing a firearm or
ammunition while being an undocumented alien; possessing a firearm or ammunition
while having a previous felony conviction; possessing a firearm or ammunition while
having a mental health history; are under indictment; or are on certain psychiatric
medications. Those falling under these categories may be innocent under that Statute
(18 U.S.C. 922(g)(1)).


The Supreme Court held in Rehaif v. Uniteed States, 139 S. Ct. 2191 (June 21, 2019),
that the Government must now and should have always proved both that the defendant
knew he possessed a firearm and/or ammunition and that he knew he was an undocumented
alien or part of the relevant categories outlined above of persons barred from
possessing s firearm or ammunition. Those looking for relief under Rehaif, can
file a 2255 to defendant or defendants' sentencing court if he still have his 2255
rights. That is, after his conviction, he have one year to file a 2255 Direct

Appeal to preserve the statute of limitations.  Or he can file a federal writ of
Habeas Corpus under 28 U.S.C. 2241, in the Federal Court where he's currently
imprisoned (the federal institution where he is serving his time) and assert that
he is actually innocent of his conviction and that the court lacked the requisite
subject matter jurisdiction over your 922(g) conviction.

Lastly, there is an important decision awaiting oral argument in the United States
Supreme Court this term.  Shular v. United States, No. 18-6662.  Shular challenges
the Force Clause of the Armed Career Criminal Act (18 U.S.C. § 924(c)).  Legal
scholars predict that Shular will allow prisoners to challenge the 924(c) firearm
offenses that were used in futherance of a drug crime.  It's predicted that this is
the second round of Davis.

BOP "Unconstitutional Vague" Rules, Policies,

and Procedures - BOP Program Statement No.

5050.50 Compassionate Release/Reduction in

Sentence: Procedures for Implementation

of 18 U.S.C. § 3582(c)(1)(A) and 4205(g)

and

Violation of Due Process Clause 14th Amendment

and Violation of Equal Protection Clause 14th Amendment

as Evident Reveals Modern Day Slavery/Torture

for BOP Political Gain, and Financial Gain $

#1.  A deportable alien can make financial income inside BOP as long he's working
daily for Unicor, Maintenance, Kitchen, Health Services, CMS.  He's guaranteed to
receive .10¢ to .20¢ per hour for hard labor.  But he "cannot" & "will not" be
considered a U.S. Citizen just a cheap labor worker.

#2.  In order for deportable aliems to work and avoid 24/7 lockdown he must be com-
pletely vaccinated while he's in the care of BOP.

#3.  Warden T. Jussino instruct all her BOP staff members "do not" assist nor

4.

submit handwritten letters/memo to Immigration and Customs Enforcement seeking removal of any deportable aliens  detainers or holds while in BOP control. Warden T. Jusino has no excuses for demonstating Abuse of Power in denying any deportable aliens relief under 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)

Immigration and Customs Enforcement detainers shields Warden T. Jusino and BOP protection from granting any deportable aliens his/her rights under BOP Program Statement No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C.S. 3582(c)(1)(A) and 4205.

Page    1    -  16   prove defendant Francsico javier Serrano has experience multiple disparity of Miscarriage of Justice in being a Deportable Alien from another country in U.S. illegally...

Mark Nebgen<br>
U.S. Probation Office<br>
Sandra Day O'Connor U.S. Courthouse<br>
401 W. Washington Street, Suite 160, SP7<br>
Phoenix, Arizona 85003:

"Breach of Duty under Smith  Variance, 18 U.S.C. § 3624(c) Unprofessional Misconduct towards deportable aliens.  (See exhibit B)

Conflict of Interest

Miscarriage of Justice

COVID-19 Relief 18 U.S.C. § 3582(c)(1)(A)

Jon M. Sands<br>
Federal Public Defender

Kristina Sitton #023467<br>
Assistant Federal Public Defender

Keith J. Hilzendeger #023685<br>
Assistant Federal Public Defender<br>
850 West Adams Street, Suite 201<br>
Phoenix, AZ 85007<br>
phone:  602-382-2700

5.

18 U.S.C.S. § 3582(c)(1)(A)

Quantication under Armed Career Criminal Act, First Step Act, Section 401 enclosed
BOP Rehabilitation Program Completed

Supreme Court limits definition of "violent felony" in the federal gun-possession
penalty:

A fractured Supreme Court on thursday narrowed the scope of a key phrase in the Armed
Career Criminal Act, ruling that crimes involving recklessness do not count as
"violent" for the purpose of triggering a key sentencing enhancement.

The case, Borden v. United States, involved a provision of ACCA that imposes a 15-
year minimum sentence on anyone convicted of being a felon in possession of a fire-
arm if the person has three or more prior convictions for a "violent felony".  The
term "violent felny" is defined, in relevant, as any felony that "has as an element
the use, attempted use, or threatened use of physical force against the person of
another.

Borden v. United States, No. 19-5410 (S. Ct. June 10, 2021)

How many federal prisoners might now be serving illegal sentences after Borden?

United States vs. Owens 996 F. 3d 755

Owens was convicted of several crimes surrounding a bank robbery.  As relevant here,
he was convicted of five counts of possession or aiding and abetting the possesion of
a firearm during a crime of violence.  The government originally charged him with one
bank robbery count and admitted that if he had agreed to cooperate then the govern-
ment would have allowed him to plea to this single count.  He did not and the govern-
ment charged him with several more counts.  This was rejected and trial was commen-
ced where he was found guilty and sentenced to 1260 months for three 924(c) convic-
tions.  The year was 2004.

"Owens's counsel argued that the First Step Act's changes to §924(c), the fact that
Owens received an effective life sentence largely as a penalty for choosing to go to
trial, and Owens's remarkable rehabilitation constituted extraordinary and compelling
reasons for compassionate release."  The district court denies this:

"The district court concluded that the disparity between the sentence that Owens
received and the sentence that he would receive today because of the First Step Act's
amendments to §924(c) was not an 'extraordinary and complleing' reason to merit
compassionate release...Congress expressly declined to make changes to § 924(c)
retroactive, and the Sixth Circuit has implicitly recognized as much...The district
court did not consider Owens's evidence of rehabiltation or any other bases for a
finding or extraordinary and compelling reasons, nor did the district court consider
the 18 U.S.C. § 3553(a) factors."

On appeal, the Sixth Circuit said that, "Owens presented three factors that he asserted
together warranted compassionate release [the trial penalty, the stacked 924(c)'a
and his rehabilitation].  the district court here did not consider two of the factors
Owens asserted and should have determined whether the combination of all three factors
warranted compassionate release."  They decided to remand the case back to the district

court to "mak[e] an indvidualized determination about whether extraordinary and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendat's actual sentence that he would receive if the First Step Act applied[.]"

Further, the Sixth Circuit stated "Our decisions in Tomes and Wills do not foreclose this middle path.  In Tomes, the defendant was left with only his First Step Act § 401 sentencing argument after the panel concluded that he had not adequately alleged health conditions that put him at increased risk of COVID-19 complications.  In Wills, the defendant's pro se motion for compassionate release raised only First Step Act § 401's changes to his sentencing statutes.  In accordance with our holding that, in making an individualized determination about whether extraordianry and compelling reasons merit compassionate release, a district court may include, along with other factors, the disparity between a defendant's actual sentence and the sentence that he would receive if the First Step Act applied, we remand to the district court for further proceedings."

The Sixth Circuit remanded this case back to the district court.

Supreme Court limits definition of "violent felony" in federal gun-possession penalty:

A fractured Supreme Court on Thursday narrowed the scope of a key phrase in the Armed Career Criminal Act, ruling that crimes involving recklessness do not count as "violent felonies" for the purpose of triggering a key sentencing enhancement.

Justice Elena kagan announced the judgment of the court and wrote an opinion that was joined by Justices Stephen Breyer, Sonia Sotomayor and Neil Gorsuch.  justice Clarence Thomas did not join Kagan's opinion but concurred in the result.  That means that five justices rejected the federal goverment's more expansive interpretation of the term "violent felony" and handed a victory to a criminal defendant who argued that the sentencing enhancement did not to his conduct.

The case, Borden v. United States, involved a provision of ACCA that imposes a 15-year minimum sentence on anyone convicted of being a felon in possession of a firearm if the person has three or more prior convictions for a "violent felony".  The term "violent felony" is defined, in relevant part, as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another."

Charles Borden Jr. pleaded guilty to a felon-in-possession charge, and the government sought the sentencing enhancement under ACCA.  Borden argued that the Tennessee law for reckless aggravated assault.  That crime, as its name suggests, can result from reckless conduct a less culpable legal standard than purposefully or knowingly causing injury.  Borden argued that only purposeful or knowing conduct can meet ACCA's definition of "violent felony".  Mere recklessness, he said, does not qualify.

The U.S. Court of Appeals for the 6th Circuit disagreed with Borden and ruled that a crime involving recklessness counts as a "violent felony" that will trigger ACCA's sentencing enhancement.  The Supreme Court reversed that decision on Thursday.  Kagan's opinion for a four-justice pluraltiy focused on the phrase "against the person of another" in ACCA's definiton.  That language, she concluded, encompasses only purposeful or knowing crimes, not reckless ones.  "The phrase 'against another', when modifying the 'use of force', demands that the perpetrator direct his action at, or target, another individual.  reckless conduct is not aimed in that prescribed manner.", Kagan wrote.

Thomas, in a solo conconcurrence, reluctantly agreed with the result. He agreed with Kagan that Borden's tennessee reckless-assualt conviction does not count as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." But his reasoning was different. Rather than rely on the phrase, "against the person of another", Thomas focused on the phrase "use of physical force." That phrase, Thomas said, is limited to intentional acts desigend to cause harm.

Thomas went on to say that, in his view, a seperate provision of ACCA's definition of "violent felony" should capture Borden's reckless-assault conviction. That provision the definition's so-called residual clause includes any felony that "involves conduct that presents a serious potential risk of physical harm or injury to another." But six years ago in Johson v. United States, the Supere Court ruled that the residual clause is so vague that it is unconstitutional and therefore cannot be enforced. In his concurrence, Thomas called on the court to overrule Johnson.

Kavanaugh's 38-page dissent (longer that Kagan's plurality opinion and Thomas' concurrence combined) accuses Kagan of adopting a tortured reading of the phrase "against the person of another" to limit the reach of the statute. "The Court's decision overrides Congress's judgment about the danger posed by recidivst violent felons who unlwafully possess firearms and threaten further violence.", Kavanaugh wrote.

● How many federal prisoners might now be serving illegal sentences after Broden? ●

We will bring more in a psot about just how current federal prisoners serving Armed Criminal career Act sentences might seek relief from now-illegal long sentences based on the Supreme Court's important ruling in Borden v. U.S. No. 19-5410 (S. Ct. June 10, 2021), limiting applicable ACCA precedents. But this post is the preliminary question in the title, can we figure out how many federal prisoners migh now be serving illegal sentences after Borden because they were senteced on the basis of a reckless predicate ACCA offense?

As a PRO se litigant, petitioner is entitled to the full protection of the Pro Se litigant Liberal Construance Doctrine established in _Haines v. Kerner_, 440 U.S. 519 (1972); _Boag v. MacDougall_, 454 U.S. 364 (1982); and _Hill v. United States_, 468 U.S. 424 (1987)

Equal Protection Clause and Due Process Clauses Warrants this court to refer this case for review to a CJA panel attorney.  Correct miscarriage of justice, BOP pattern of treating deportable aliens as slave workers in order to cover up legal wrongs and wrongdoing in general.  Preventing defendant from receiving Compassionate Release/ reduction In Sentence 18 U.S.C. § 3582(c)(1)(A) and 4205(g).

Respectfully submitted 27th day of September, 2021.

x _Franto Serrano_
Defendant, PRO SE

Francisco Javier Serrano
Reg # 88785-008
FCI #1 Victorville Medium
P.O. Box 3725
Adelanto, CA 92301

original copy filed
Clerk of United States Courthouse
Sandra Day O'Connor
401 West Washington Street.
Suite 130, SPC1
Phoenix, AZ 85003
copies To Mexican Consulate
293 North D Street
San Bernardino, CA 92401
(909) 889-9837

ATTACHMENTS

Page 10. - certificate of Service

Page 11 - Memorandum For All Inmates FCC Victorville Complex

Page 12-13 Federal Prison Newsletter for August 23, 2021 PT
Out of control Delta Variant/Infection/BOP Updates

Page 14 - Conspiracy Against Rights 18 U.S.C, § 241

Page 15 - Exhibit A Compassionate Release denial

Page 16 - Exhibit B No. CR-08-932-PHX-DGC
Defendant's Objections To Draft Presentence
Report (Page 1-8)

9.

## CERTIFICATE OF SERVICE

I, _Francisco Javier Serrano_, hereby certify that
I have served a true and correct copy of the following:

Which is deemed filed on the date below, at the time it was
delivered to prison authorities for forwarding, HOUSTON v LACK,
101 L. Ed 2d 245 (1988), upon the plaintiff, plaintiffs, and or
his attorneys of record by placing same in a sealed, postage
prepaid envelope addressed to: _Sandra Day O'Connor_
_United States Courthouse_
_401 West Washington Street,_
_suite 130  spc 1_
_Phoenix, AZ 85003_

And depositing same in the United States Mail at the Federal
Correctional Institution.

I declare, under penalty of perjury (Title 28 U. S. C. § 1746)
that the foregoing is true and correct.


Dated this _September_ DAY OF _27_        20 _21_

_Defendant's Mailing Address_

_Francisco J. Serrano_
_Reg# 88785-008_          Signed: _Frank Serrano_
_FCI#1 Victorville Medium_
_P.O. Box 3725_
_Adelanto, CA 92301_

page 10



U.S. Department of Justice

Federal Bureau of Prisons

August 19, 2021

MEMORANDUM FOR ALL INMATES FCC VICTORVILLE

FROM:            Felipe Martínez, Jr., Complex Warden

                 FCC Victorville

SUBJECT:         COVID-19 Modified Operations

Effective Monday, August 23, 2021, the Bureau will implement new COVID-19 operational levels in consideration of recently published CDC guidance for correctional institutions. The COVID-19 operational levels are based upon a color-coded tiered approach that will permit operations to continue in a safe, secure manner while adjusting previously adopted COVID-19 mitigation strategies.

The tiered approach addresses infection control measures, inmate programing and service needs, movement, and staff screening/testing guidance in accordance with the continued use of the BOP's COVID-19 Pandemic Plan.

This tiered approach utilizes three indicators for each institution to determine a modified operations level. The modified operations level is monitored daily by the institution Health Services Administrator, (or designee,) and reported to the Warden at each respective location. The Warden retains authority for all operational decisions.

The three indicators utilized are: 1) medical isolation rate within the institution (active cases); 2) Facility vaccination rates (includes staff and inmates); and 3) community transmission rates in the surrounding communities of our institutions. A percentage-based formula is applied to these three indicators and determines the level of modified operations. Those levels are: Level 1 Operations-Minimal Modifications (commonly referred to as Green), Level 2 Operations-Moderate Modifications (commonly referred to as Yellow), and Level 3 Operations-Intense Modifications (commonly referred to as Red).



-----------------------------------------------------------------------------------------------------------------



SUBJECT: FEDERAL PRISON NEWSLETTER FOR AUGUST 23, 2021 PT. 2
DATE: 08/23/2021 02:06:29 PM

FEDERAL PRISON NEWSLETTER FOR August 23, 2021 PART 2

Hi Everyone:

Thank you for subscribing to my newsletter. Please continue to encourage others to subscribe by adding info@topfederallawyer.com to your contact list. If you are interested in hiring me to work on something for you, please add INFO@GORDONDEFENSE.COM to your email list. Your friends and family can request an appointment to speak with me about your case by visiting the appointment link at the top of my website, www.gordondefense.com.


Barnstable County: Breakthrough Cases and Vaccination

Over a year into the COVID-19 pandemic and several months into the spread of the Delta variant of the virus, public health conversations seemingly shifted focus. While 2020 conversations centered primarily on social distancing, masking, and isolation protocols, the rollout of several effective vaccines redirected conversations towards vaccination rates.

However, the CDC's recent adjustment to their guidance on mask-wearing recommended that even fully vaccinated people should wear masks in high-risk settings.  This change reintroduced earlier pandemic mitigation measures into public consciousness and sparked confusion over the efficacy of vaccinations   a potentially detrimental stumbling block to efforts to end the COVID-19 pandemic, especially given hesitancy around vaccines in many areas of the country. Luckily, the CDC clarified many of these concerns by publishing its research into a July COVID-19 outbreak in Barnstable County, Massachusetts.

Barnstable County experienced a significant outbreak of the Delta variant of COVID-19 among vaccinated individuals this summer. Despite high vaccination rates in Massachusetts (69%) compared to the national average, 74% of the cases reported in the outbreak were vaccinated against COVID-19. While most of the vaccinated cases were symptomatic, very few reported severe symptoms, even fewer were hospitalized, and none died.

As Carolyn Y. Johnson, Yasmeen Abutaleb, and Joel Achenbach of The Washington Post note in their article covering the outbreak , the statistics fairly startle and concern many people, especially those already wary of receiving a COVID-19 vaccine. What is the purpose of getting a vaccine if it does not prevent infection? Johnson, Abutaleb, and Achenbach reiterate that the COVID-19 vaccine does not generally aim to prevent infection, but to prevent the severity of the infection. Such an assertion is reflected in this case where comparatively few infected individuals experienced serious illness.

However, the CDC emphasizes in its report that the sample size of this case is extremely limited. While it may reflect overall patterns, this case can't be used on its own to draw conclusions about the efficacy of the vaccine. Additionally, the CDC quells some concern surrounding the sheer percentage of infections that occurred in vaccinated individuals by pointing out that the fact that the outbreak occurred in an area with a high vaccination rate may have a significant effect on the percentages we see. If the majority of a population is vaccinated, it stands to reason that the majority of infections would occur in vaccinated individuals, if only because fewer unvaccinated people exist in that area.

Despite the possibility of contracting the virus even after vaccination, the substantially lower risk associated with infection after vaccination indicates that vaccination efforts are largely helpful in keeping people safe on an individual level. On a communal level, vaccinations can help slow the spread of COVID-19 thereby producing fewer opportunities for mutation, as reported by the Universtiy of Maryland Medical System.

However, the Barnstable County outbreak indicates the distinct possibility that vaccinated individuals can still spread the virus with a significant viral load.. Therefore, although vaccines are almost definitely effective at moderating personal illness, the level to which they help prevent mutations is yet to be seen. While we can be reasonably sure that they have some positive effect on slowing mutations, we will need more research before knowing this for sure.

In a similar vein, this case has also raised questions about herd immunity. Earlier in the pandemic, Dr. Fauci indicated that herd immunity would likely require a vaccination rate of between 60 and 70 percent. But, in the months following vaccine rollouts, Dr. Fauci also emphasized that the true percentage for herd immunity is relatively unknowable and could be much higher.

---

Additionally, Donald G.. McNeil Jr. of the New York Times also reported that the rate of vaccination to achieve herd immunity rises with a disease's transmissibility.

The relationship between herd immunity and transmissibility is essential in the case of Barnstable County as a vast majority of the positive cases consisted of the Delta variant. The CDC reported on August 6th that the Delta variant in particular is significantly more transmissible than other forms of COVID-19. Correspondingly higher rates of inoculation to the virus will be necessary as the Delta variant continues to spread. In the Barnstable County outbreak, many vaccinated individuals with the Delta variant exhibited fairly substantial viral loads, meaning that they are likely spreading the virus to other vaccinated individuals once infected.

Concern for federal inmates as public efforts to stop the pandemic expand to include both widespread vaccination and social distancing and masking efforts should remain a top priority. As we reported last summer, prison conditions are almost never conducive to social distancing, heightened hygiene, or healthcare management. Subsequently, they often constitute virtual petri dishes for disease and have proven extremely dangerous during the COVID-19 pandemic.

As such, federal inmates should take note of both vaccination, masking, and distancing guidelines to the best of their ability despite unideal circumstances. The Barnstable County case shows us that both mitigation protocols and vaccination efforts are necessary to keep ourselves and each other safe and that, though new tools exist with the advent of fairly effective COVID-19 vaccines, we are still in the midst of the pandemic and should act accordingly.

If you or a loved one is in federal prison, our office urges you to consider the following:

1.      Get vaccinated. The BOP has been vaccinating individuals and boasts over 200k vaccines administered. Vaccination provides individual protection against all existing strains and variants of the virus so far as well as community protection to the people around you. Further, the BOP keeps records of those who refuse vaccination. Although vaccination is not required, government opposition to compassionate release motions can cite vaccination refusal to argue that if your current situation is not dangerous enough to warrant vaccination, it cannot be dangerous enough to justify release.

2.      Ask for CARES Act relief. While the BOP has applied the CARES Act wildly inconsistently and we don't currently know their policy on granting CARES Act relief, we strongly encourage you to continue to seek it, especially if you have preexisting risk factors.

3.      Continue to engage in safety measures. The rise of the breakthrough cases in vaccinated individuals is largely anticipated. By most standards the vaccines are between 60-95 percent effective against the delta variant. But those numbers can increase when the user takes special precautions. Specifically, wearing face masks and engaging in social distancing as much as possibly within the prisons can help reduce your chances of contracting COVID-19, spreading COVID-19, or contributing to infection outbreaks that serve as breeding grounds for new mutations and variants.

CONCLUSION

We are just about out of space for this edition of the newsletter. Take care and stay safe.

Jeremy Gordon, Esq.
P.O.BOX 2275
Mansfield, Texas 76063
Tel: 972-483-4865
Website: www.gordondefense.com
E-mail: info@topfederallawyer.com (newsletter sign-up)
info@gordondefense.com (retention inquiries)
www.facebook.com/gordondefense (please visit and "like")
Inmate Calls Arranged by Appt.
(please call my office and ask one of my assistants to set a time for me to speak with you)

# 18 USCS § 241

Current through PL 115-338, approved 12/20/18, with a gap of 115-334.

*United States Code Service - Titles 1 through 54 > TITLE 18. CRIMES AND CRIMINAL PROCEDURE > PART I. CRIMES > CHAPTER 13. CIVIL RIGHTS*

## § 241. Conspiracy against rights

If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured--

They shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill, they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

## History

(June 25, 1948, ch 645, § 1,62 Stat. 696; April 11, 1968, P.L. 90-284, Title I, § 103(a), 82 Stat. 75; Nov. 18, 1988, P.L. 100-690, Title VII, Subtitle B, § 7018(a), (b)(1), 102 Stat. 4396; Sept. 13, 1994, P.L. 103-322, Title VI, § 60006(a), Title XXXII, Subtitle A, § 320103(a), Subtitle B, § 320201(a), Title XXXIII, § 330016(1)(L), 108 Stat. 1970, 2109, 2113, 2147; Oct. 11, 1996, P.L. 104-294, Title VI, §§ 604(b)(14)(A), 607(a), 110 Stat. 3507, 3511.)

**Prior law and revision:**

Based on title 18, U.S.C., 1940 ed., § 51 (March 4, 1909, ch. 321, § 19, 35 Stat. 1092).

Clause making conspirator ineligible to hold office was omitted as incongruous because it attaches ineligibility to hold office to a person who may be a private citizen and who was convicted of conspiracy to violate a specific statute. There seems to be no reason for imposing such a penalty in the case of one individual crime, in view of the fact that other crimes do not carry such a severe consequence. The experience of the Department of Justice is that this unusual penalty has been an obstacle to successful prosecutions for violations of the act.

Mandatory punishment provision was rephrased in the alternative.

Minor changes in phraseology were made.

Annotations

## Notes

**Amendments:**

**1968** . Act April 11, 1968 substituted "They shall be fined not more than $ 10,000 or imprisoned not more than ten years, or both; and if death results, they shall be subject to imprisonment for any term of years or for life." for "They shall be fined not more than $ 5,000 or imprisoned not more than ten years, or both.".

# EXHIBIT A



Inmate Name: SERRANO, Francisco Javier
Register No.: 88785-008
Unit: A Upper

This is in response to your Request for Compassionate Release/Reduction in
Sentence, based upon the risk of the COVID-19 virus and your time served.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a
sentencing court, on motion of the Director of the BOP, to reduce a term of
imprisonment for extraordinary or compelling reasons. BOP Program Statement
No. 5050.50, Compassionate Release/Reduction in Sentence: Procedures for
Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), provides guidance
on the types of circumstances that present extraordinary or compelling
reasons, such as the inmate's terminal medical condition; debilitated
medical condition; status as a "new law" elderly inmate, an elderly inmate
with medical conditions, or an "other elderly inmate"; the death or
incapacitation of the family member caregiver of the inmate's child; or the
incapacitation of the inmate's spouse or registered partner. Your request
has been evaluated consistent with the general guidance.

A review of your circumstance indicates you were sentenced to a 240 month
aggregate sentence with a 5 year term of supervision for Armed Bank Robbery
and Aiding and Abetting, Use of a Firearm During a Crime of Violence and
Aiding and Abetting. Your current projected release date is September 18,
2026. You have served 67% of your sentence. Presently, you have a detainer
with the Immigration and Customs Enforcement. All detainers and holds should
be resolved prior to the Warden's submission of a case under 18 U.S.C.
3582(1)(A) or 4205(g).

The BOP is taking extraordinary measures to contain the spread of COVID-19
and treat any affected inmates. We recognize that you, like all of us, have
legitimate concerns and fears about the spread and effects of the virus.
Your concern about the risk of COVID-19 does not currently warrant the BOP
to make a motion for modification of your sentence to the sentencing judge.

Additionally, RIS consideration may be given to inmates who have been
diagnosed with a terminal and incurable disease whose life expectancy is
eighteen months or less or who have suffered a debilitating injury from
which they will not recover. Your case was reviewed by the Medical
Department and determined that your medical condition is not terminal or
debilitating.

Furthermore, you have not provided any documentation to support your request
for a Compassionate Release as required by Program Statement, 5050.50,
Compassionate Release/Reduction in Sentence. Specifically, you must include
where you will reside and how you will support yourself.

While it is understandable you desire to be with your family, this does not
present extraordinary or compelling reasons for you to receive a
Compassionate Release or Reduction in Sentence.

Based upon a review of all of the factors discussed above, I do not find that there are "extraordinary or compelling circumstances" as required by the statute to recommend the Bureau make a motion before your sentencing court seeking a reduction in sentence. Your request for Compassionate Release/Reduction in Sentence is denied. If you are not satisfied with this response to your request, you may commence an appeal of this decision via the Administrative Remedy process.

I trust this addresses your concerns.

T. Jusino, Warden

11/16/2020

Date

BP-A148.070
SEP 98

**INMATE REQUEST TO STAFF MEMBER**

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member) WARDEN T. JUSINO | DATE: 8/30/20 |
|---|---|
| FROM: FRANCISCO SERRANO | REGISTER NO. : 88785-CCE, |
| WORK ASSIGNMENT: N/A | UNIT: A-UPPER /#420 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.)

Mrs. Jusino, I am requesting To be granted home Confinement, or a reduction of sentence. There are Thousands of inmates who have been infected and Tested positive for Covid-19. Several Dozen of Them have passed away. Including One inmate here at F.C.I. Victorville 1, On Aug. 19, 2020. For The ones who have luckily recovered, They will have permanent heart damage. Among other medical conditions for The rest of Their lives. Hundreds of inmates have filed lawsuits in F.C.I Terminal Island, And in Lompoc F.C.C. Some federal Judges have ruled for inmates To be released. Mrs Jusino, I have been incarcerated And away from my family for over 13 years. I Havent seen Them since. I m almost done with my sentence, and am being puT aT risk everyday, in here, being exposed To inmates who are Covid-19 positive. I don't want To die in Prison. I Have work waiting for me upon my release. A Place To stay, and Tons of family support. Thank you for your Time. Respectfully submitted!

Franks Serrano

(Do not write below this line)

DISPOSITION:



RECEIVED
383
AUG 3 1 2020
By VIM WARDENS
OFFICE

| Signature Staff Member: | Date: |
|---|---|
| | |

Record Copy  - File; Copy - Inmate

Replaces BP-148 of OCT 86

# EXHIBIT B

1  JON M. SANDS
   Federal Public Defender
2  District of Arizona
   850 West Adams, Suite 201
3  Phoenix, Arizona 85007-2730
   Telephone: (602) 382-2700
4
5  KRISTINA SITTON, # 023467
   Asst. Federal Public Defender
6  Attorney for Defendant
   kristina_sitton@fd.org
7
                IN THE UNITED STATES DISTRICT COURT
8
                   FOR THE DISTRICT OF ARIZONA
9
10 United States of America,
                                          No. CR-08-932-PHX-DGC
11         Plaintiff,
                                    DEFENDANT'S OBJECTIONS TO
12 vs.                                 THE DRAFT PRESENTENCE
                                             REPORT
13 Francisco Javier Serrano,
14         Defendant.

15         Defendant Francisco Serrano, through counsel, submits the following

16 objections to the draft presentence report.

17         1.     OBJECTION 1: Page 7, Paragraph 23.

18         The Government cannot meet its burden to attribute the August 1, 2008

19 Chase Bank robbery to the defendant.  As is later stated in Paragraph 29 of the

20 presentence report, page 8, though Mr. Serrano was identified by victim Jesus Maltos

21 as the individual who robbed him of his vehicle at gunpoint, co-defendant Andrei

22 Chavez admitted when arrested on November 5, 2008, that he was the individual who

23 did so. *See* Glendale Police Department Investigation Supplement #08-72907, dated

24 November 5, 2008, attached hereto as Exhibit 1, ¶¶5-7.   Mr. Chavez later

25 corroborated this information in a free talk with the Government.  *See* Glendale

26 Police Department Investigation Supplement #08-72907, dated November 24, 2008,

27 attached as Exhibit 2, ¶2.  In that free talk, Mr. Chavez was also able to describe the

28 victim and the manner in which the victim's wallet was stolen.  *Id.*  Co-defendant

                                    1.

1  Herardo Islas also identified "Kazi," Andrei Chavez' nickname, as involved in the
2  August 1 robbery. *See* FBI 302 of Herardo Islas, dated 10/17/2008, attached as
3  Exhibit 3, ¶6.

4          When Mr. Serrano, his brother Marco Serrano, Julio Feliciano, and
5  Herardo Islas were caught after having committed the August 12 robbery, attempts
6  were made by the police and FBI to determine which other banks for which the group
7  was responsible based on similar modus operandi.  Lineups with the aforementioned
8  individuals were created and one containing Mr. Serrano was presented to the owner
9  of the Pathfinder, Jesus Maltos, on August 20, 2008.  It was then that Mr. Maltos
10 identified Mr. Serrano as having robbed him of his vehicle at gunpoint.  However,
11 because Mr. Chavez declined to participate in the August 12 robbery, his involvement
12 in the group was not learned until much later (Glendale PD Detective Lankford
13 developed probable cause for Mr. Chavez' arrest on September 26, 2008, an arrest
14 warrant was obtained on September 29, 2008, and Mr. Chavez was not arrested until
15 November 4, 2008).  No lineup containing Mr. Chavez' picture was shown to the
16 victim.
17
18         Mr. Chavez admitted his involvement in the August 1 robbery.  Mr.
19 Chavez was able to recite facts regarding the bank robbery and the carjacked victim
20 that only someone who was there would know.  Mr. Islas identified Mr. Chavez as
21 having been involved in the August 1 robbery upon viewing the surveillance video.
22 Despite these three facts that suggest strongly that Mr. Chavez was involved in this
23 robbery, the Government chose not to charge Mr. Chavez and chose instead to charge
24 Mr. Serrano with this robbery.  However, given the above, the Government cannot
25 meet its burden sufficient to prove Mr. Serrano's involvement in the August 1 bank
26 robbery referenced in paragraph 23 of the presentence report and count Counts 12 &
27 13 of the Indictment.
28

2

2.      OBJECTION 2: Page 9, Paragraph 38.

Defendant incorporates Objection 1 herein.  Mr. Serrano should not be held responsible for restitution from the August 1 bank robbery based on the evidence that shows he was not involved.  The appropriate restitution amount should be reduced by $3,344.00.

3.      OBJECTION 3: Page 11, Paragraph 54.

Defendant objects to the conclusion that he is a Career Offender pursuant to U.S.S.G. §4B1.1.  The assault statute is overbroad and categorically is not a crime of violence.  Additionally, when considering the appropriately recognized judicial documents, the statute under which Mr. Serrano was charged and pled, Aggravated Assault under A.R.S. §§13-1204(A)(6) & 13-1203(A)(3), does not qualify as a "crime of violence" pursuant to the Sentencing Guidelines.[1]

Mr. Serrano was charged in Maricopa County Superior Court with Aggravated Assault in September of 2005 (¶61).  Exhibit 4.  In Arizona, assault is a misdemeanor and can be committed in one of three different ways under Arizona Revised Statute (hereinafter A.R.S.) §13-1203:

1. Intentionally, knowingly or recklessly causing any physical injury to another person; or

2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or

3. Knowingly touching another person with the intent to injure, insult or provoke such person.

. . .

---

[1]Because the enhancements at issue would increase the advisory guidelines by eight levels, and disproportionately increase his guideline range from 154-171 months to 272-319 months, the government bears the burden of proof by at least clear and convincing evidence.  *See e.g., United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999).

3

An assault becomes aggravated, and thus a felony punishable by over a year in custody rather than a misdemeanor punishable by no more than six (6) months in custody, in several specific circumstances, including an assault committed against a person fifteen (15) years of age or younger. A.R.S. §13-1204(A)(6). This section states, in pertinent part, as follows:

> "A person commits aggravated assault if the person commits assault as prescribed by A.R.S. §13-1203 under any of the following circumstances:
>
> > 6.    If the person is eighteen years of age or older and commits the assault on a child who is fifteen years of age or under."

A.    Categorical Approach

The categorical approach under *Taylor v. United States*, 495 U.S. 575 (1990) governs the inquiry as to whether a particular conviction satisfies the elements of a particular sentence enhancement provision. *United States v. Piccolo*, 441 F.3d 1084, 1086-87 (9th Cir. 2006). In *Piccolo*, the 9th Circuit held that the *Taylor* approach applies to the issue of whether a conviction qualifies as a "crime of violence." *Id*. *Taylor* requires a determination whether the statutory elements of the prior offense are included within the federal provision. *James v. United States*, 127 S.Ct. 1586, 1594 (2007). The full range of conduct encompassed by the statutory offense must be sufficiently restricted that it would ordinarily fall within the definition of a crime of violence in order for the *Taylor* categorical inquiry to be satisfied. *See United States v. Vidal*, 504 F.3d 1072, 1076-77 (9th Cir. 2007).

The assault statute is not categorically a crime of violence because a person can be guilty of assault under A.R.S. §1203(A)(3) if the conduct includes what other courts have deemed to be "offensive touching" due to no requirement of use, attempted use, or threatened use of physical force. In *State v. Mathews*, 130 Ariz. 46, 633 P.2d 1039 (App. Div. 1. 1981) the Defendant was convicted of assault under A.R.S. §13-1203(A)(3) after throwing urine on a prison guard. The Court of Appeals

4

upheld his conviction on these facts on the finding that the statute does not require person-to-person contact. *Id.* at 49, 1042. In counsel's experience, the State of Arizona regularly charges a defendant with assault under this subsection when an individual spits on another. Neither of the aforementioned conduct constitutes the use, attempted use, or threatened use of physical force. Because one can violate the Arizona assault statute by touching another "with the intent to insult or provoke," this statute is categorically more broad than the federal definition. *See, e.g., Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016-17 (9th Cir. 2006) (finding California misdemeanor battery statute allowing for "offensive touching" is not categorically a crime of violence); *Singh v. Ashcroft*, 386 F.3d 1228, 1231-32 (9th Cir. 2004) (Oregon statute involving offensive touching not categorically crime of violence).

B.    Modified Categorical Approach

Because the offense of conviction is overbroad and fails the categorical inquiry, this Court must then employ the *Taylor* modified categorical approach. *See e.g., Vidal, supra*, at 1077. Under the modified approach, there must be sufficient judicially noticeable evidence in the record to support a conclusion that the conviction was founded entirely on elements within the generic definition of a crime of violence. *Id.*

There are extensive limitations on the documents which are judicially noticeable under the modified categorical approach. These consist of the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). The sentencing court, in applying the modified categorical approach, *cannot* look to police reports or complaint applications. *Id.* Consent or stipulation by the defendant is the only exception to this rule. *United States v. Almazan-Becerra*, 482 F.3d 1085, 1090 (9th Cir. 2007).

5

1    In this case, the charging documents and plea agreement are not specific

2 and simply reference the generic Assault and specific Aggravated Assault statutes:

3 A.R.S. §§13-1203 and 13-1204(A)(6), respectively.    Because no subsection is

4 specifically enumerated in the Information charging Mr. Serrano, the Court must look

5 to the language specified in the Information, attached as Exhibit 4, and plea

6 agreement, attached as Exhibit 5. The Information's language specifies that the State

7 charged Mr. Serrano with the underlying assault defined in §13-1203(A)(3), which,

8 as stated above, is categorically NOT a crime of violence. The underlying type of

9 assault is not specifically enumerated in the plea agreement nor is there a factual basis

10 to which the Court can look.  Counsel has not been able to obtain a transcript of the

11 plea colloquy from the court reporter to date.

12    The conviction listed in Paragraph 29 of the presentence report is not a

13 "crime of violence" because the statute at issue does not categorically include the

14 "use of force."   In addition, the government cannot meet its burden under the

15 modified categorical approach to prove the judge found and the defendant admitted

16 to a crime of involving the use of force.  Accordingly, Mr. Serrano should not be

17 sentenced as a Career Offender pursuant to  U.S.S.G. § 4B1.1.

18       4.    OBJECTION 4: Page 14, Paragraph 66:

19       Defendant incorporates Objection 3 and submits that because he is not

20 a Career Offender, his Criminal History Category should not be VI.

21

22       5.    REVISED GUIDELINE CALCULATION

23       Should the Court grant Objections 1 & 2, there would be no change to

24 the  applicable sentencing range.  However, the restitution that Mr. Serrano is

25 responsible for would be reduced by $3,344.00 to $11,799.00.

26 . . .

27 . . .

28

6

1    Should the Court grant Objection 3, the Chapter 4 Career Offender
2  Enhancement listed in paragraph 54 would not apply and the applicable offense level
3  would be reduced to its true level, level 26.

4    Should the Court grant Objection 4, Mr. Serrano's Criminal History
5  Category would be IV.

6    If the Career Offender sentence enhancement provision does not apply,
7  the correct range of sentence, inclusive of a 3-point reduction for Acceptance of
8  Responsibility, would be 70-87 months followed by 84 months of imprisonment for
9  Count 3, resulting in an advisory Guideline Range of 154 - 171 months.

10    Respectfully submitted:  September 2, 2009.

11                                             JON M. SANDS
                                               Federal Public Defender
12

13                                             /s/Kristina Sitton
                                               KRISTINA SITTON
14                                             Asst. Federal Public Defender

15  Copy of the foregoing transmitted
    by ECF for filing this 2nd day
16  of September, 2009, to:

17  Clerk's Office
    United States District Court
18  Sandra Day O'Connor Courthouse
    401 W. Washington
19  Phoenix, Arizona 85003

20  Alison Bachus
    Assistant U.S. Attorney
21  Two Renaissance Square
    40 N. Central, Suite 1200
22  Phoenix, Arizona  85004-4408

23  Robert J Kavanagh
    51 W Elliott Rd Ste 109
24  Tempe, AZ 85284
    Counsel for Julio Feliciano
25

26  Brandon Cotto
    2 N Central Ave Ste 735
27  Phoenix , AZ 85004
    Counsel for Herardo Islas
28

                                               7

1    Stephen Christopher Kunkle
     7227 N 16th St Ste 224
2    Phoenix , AZ 85020
     Counsel for Julie Castillo
3

4    David Ochoa
     P.O. Box 22126
5    Phoenix, AZ 85028-2126
     Counsel for Andre Ulisses Chavez
6
     Copy mailed to:
7
     Mark Nebgen
8    U.S. Probation Office
     Sandra Day O'Connor U.S. Courthouse
9    401 W. Washington Street, Suite 160, SP7
     Phoenix, Arizona 85003
10
     Francisco Serrano
11
     /s/  S. B.
12   S. B

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    8

# FEDERAL PUBLIC DEFENDER
## DISTRICT OF ARIZONA

850 West Adams Street, Suite 201
Phoenix, Arizona 85007

**JON M. SANDS**
Federal Public Defender

| | |
|---|---|
| *voice* | (602) 382-2700 |
| *facsimile* | (602) 382-2800 |
| *toll-free* | (800) 758-7053 |
| *email* | keith_hilzendeger@fd.org |

September 9, 2021

Francisco Javier Serrano #88785-008
FCI-Victorville Medium I
PO Box 3725
Adelanto, California 92301

RE:     *United States v. Francisco Serrano,* No. 2:08-cr-932-PHX-DGC-3 (D. Ariz.)

Dear Mr. Serrano—

Please find enclosed a copy of the notice that I filed regarding your motion for appointment of counsel.

Take good care.

Sincerely,

Keith Hilzendeger
Assistant Federal Public Defender

KJH:slw (with enclosure)

JON M. SANDS
Federal Public Defender
KEITH J. HILZENDEGER #023685
Assistant Federal Public Defender
850 West Adams Street, Suite 201
Phoenix, Arizona 85007
(602) 382-2700   voice
keith_hilzendeger@fd.org

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. 2:08-cr-932-PHX-DGC-3 |
| Plaintiff, | **Notice Regarding Defendant's *Pro Se* Motion for Appointment of Counsel** |
| vs. | |
| Francisco Javier Serrano, | |
| Defendant. | |

On August 23, 2021, Mr. Serrano filed a *pro se* motion for appointment of counsel. (Dkt. #572) Read liberally, *see Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1991), the motion asks for appointment of counsel to assist him with two litigation tasks: a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A); and a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Pursuant to General Orders 16-20 and 20-28, the Federal Public Defender has reviewed this filing. Upon review, the Federal Public Defender sees no basis for appointment of counsel under those general orders, and leaves it to the Court's discretion under 18 U.S.C. § 3006A(a)(2)(B) whether to appoint counsel for any other reason.

On May 5, 2009, a grand jury returned a third superseding indictment that charged Mr. Serrano and six confederates with conspiracy to commit armed bank robbery, in violation of 18 U.S.C. §§ 371 and 2113(a) and (d); six counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d); and six related counts of brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). (Dkt. #111) To settle these charges, Mr. Serrano and the government entered into a plea agreement. He agreed to plead guilty to one of the armed bank robbery counts and one of the § 924(c) counts. (Dkt. #298 at 1) In exchange, the

parties stipulated pursuant to Fed. R. Crim. P. 11(c)(1)(C) that his sentence would be between 18 and 22 years in prison. (Dkt. #298 at 2–3) At the sentencing hearing held on October 28, 2009, the Court accepted the stipulated-sentence plea agreement and imposed a total sentence of 20 years, consisting of 13 years on the bank robbery followed by 7 years on the § 924(c) count. (Dkt. #299)

Mr. Serrano's *pro se* motion for appointment of counsel asks the Court to appoint counsel to assist him in seeking a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may reduce a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." This requirement does not affect this Court's subject-matter jurisdiction to entertain Mr. Serrano's *pro se* motion. *See United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (per curiam). The Court must, however, dismiss any request for a sentence reduction under § 3582(c)(1)(A) for lack of exhaustion if the government so requests. *Id.* Mr. Serrano's *pro se* motion does not explain whether he has exhausted his administrative remedies as required by § 3582(c)(1)(A). Accordingly, the Federal Public Defender sees no basis for appointment of counsel under General Order 20-28.

Mr. Serrano's motion for appointment of counsel also asks the Court to appoint counsel to assist him in litigating a motion under 28 U.S.C. § 2255. He lists several potential grounds for relief:

- Sentencing counsel was ineffective for failing to pursue a downward variance based on his status as a deportable noncitizen. *See United States v. Thomas*, 999 F.3d 723, 736 (D.C. Cir. 2021) (citing *United States v. Smith*, 27 F.3d 649, 655 (D.C. Cir. 1994)).

- Sentencing counsel was ineffective for failing to file a notice of appeal.

- Sentencing counsel was ineffective for failing to seek a "2 point departure under [the] Fair Sentencing Act."

- Sentencing counsel was ineffective for "overlooking a potential defense to his firearm charge."

2

- The sentencing judge based the sentence on inaccurate or unreliable information, in violation of his due process rights. *See, e.g.*, *United States v. Vera*, 893 F.3d 689, 695 (9th Cir. 2018) ("Reversal may be necessary when a district court bases a sentence on sources whose reliability is not apparent from the record.").

- His § 924(c) conviction is invalid under *United States v. Davis*, 139 S. Ct. 2319 (2019).

Under General Order 16-20, this Court will appoint counsel for any defendant who has a colorable claim for relief under *Johnson v. United States*, 576 U.S. 591 (2015). In *Davis*, the Supreme Court applied the rationale of *Johnson* to hold that the residual clause of the definition of the term "crime of violence" in 18 U.S.C. § 924(c)(3)(B) was unconstitutionally vague. However, the Ninth Circuit has held that armed bank robbery is a "crime of violence" under the elements clause of § 924(c)(3)(A). *See United States v. Watson*, 881 F.3d 782 (9th Cir. 2018). Accordingly, the Federal Public Defender sees no basis for appointment of counsel under General Order 16-20.

The Federal Public Defender takes no position on whether the Court should appoint counsel to assist Mr. Serrano with any of his other proposed § 2255 claims. *See generally Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) (per curiam).

The Federal Public Defender represented Mr. Serrano at sentencing, but now faces a conflict of interest in representing him because he seeks to litigate claims of ineffective assistance of sentencing counsel. *See generally Moormann v. Schriro*, 426 F.3d 1044, 1058–59 (9th Cir. 2005) (explaining that a postconviction lawyer had a conflict of interest in raising claims of ineffective assistance of appellate counsel, where the same lawyer had also represented the petitioner); *State v. Bennett*, 146 P.3d 63, 67 (Ariz. 2006) (explaining that "it is improper for appellate counsel to argue his own ineffectiveness at trial"). The Federal Public Defender stands ready to locate counsel to assist Mr. Serrano in any manner the Court may direct.

*Statement Regarding Service of This Filing.* A copy of this filing was sent by first-class mail to Francisco Javier Serrano #88785-008, FCI-Victorville Medium I, PO Box 3725, Adelanto, California 92301.

Respectfully submitted:                    September 8, 2021.

JON M. SANDS
Federal Public Defender

*s/Keith J. Hilzendeger*
KEITH J. HILZENDEGER
Assistant Federal Public Defender

To whom it may concern:
I am writing this letter to express my support
for the realese of Francisco Javier Serrano #88785-008
My name is Maria Guadalupe Murrieta I am his
mother and support system. Frankie knows and
accepts that he made a lot of mistakes in the past
and he truly regrets the crimes that he commited
He has served more than 14 years of his sentence.
he has completed all of his programs, educational
requirements and he has good behavior. I haven't
seen him in more than 14 years so all those years
I been very sad, depressed, suffering a lot cause
of my status Im not able to visit him and as
a mother i feel like a part of me is empty
but at the same time I have to be very strong
for him and his sibblings and I know when
he gets out, he's going to be a better and
mature person, and I know when he was
young he made some mistakes, but he was
the most loving and caring and very hard
working son he used to help me pay bills
rent, food and I used to work almost
every day but it wasn't enough so maybe
thats why he made those mistakes wich
of course I never aproved and I never will
But I think he's been paying with a lot
of time and Im just waiting for him to
be free so I can help him and start
again with a new life. His son needs
him too, he's 14 years already and he wants him
in is life. He's brother, sisters, nephews, nieces
are waiting for him, His Wife Christina is gonna

help him with everything, she is a wonderful lady and they deserve to be happy and start a new life together.

What worries me the most is that right now with Covid 19 is that we're not sure if we're gonna see our relatives anymore and that scares me I wanna see my son again, healthy, alive. He needs to interact with society again, and his family.

I love my son to death so I hope my prayers will be listended and answered.

Thank you so much. God bless yo

Maria Guadupe Yerruta Chavez

To whom it may concern.

I am writing this letter to express my support for the realese of Francisco Javier Serrano #88785-008 My name is MarIa Guadalupe Murrieta I am his mother and support system. Frankie knows and accepts that he made a lot of mistakes in the past and he truly regrets the crimes that he commited He has served more than 14 years of his sentence. he has completed all of his programs, educational requirements and he has good behavior. I haven't seen him in more than 14 years so all those years I been very sad, depressed, suffering a lot cause of my status Im not able to visit him and as a mother i feel like a part of me is empty but at the same time I have to be very strong for him and his sibblings and I know when. he gets out, he's going to be a better and mature person, and I know when he was young he made some mistakes, but he was the most loving and caring and very hard working son he used to help, me pay bills rent, food and I used to work almost every day but it wasn't enough so maybe thats why he made those mistakes wich of course I never aproved and I never will But I think he's been paying with a lot of time and Im just waiting for him to be free so I can help him and start again with a new life. His son needs him too, he's 19 years already and he wants him in is life. He's brother, sisters, nephews, nieces are waiting for him, His wife Christina is gonna

lady and they deserve to be happy and start a new life together.

What worries me the most is that right now with Covid 19 is that we're not sure if we're gonna see our relatives anymore and that scares me I wanna see my son again, healthy, alive. He needs to interact with society again, and his family.

I love my son to death so I hope my prayers will be listended and answered.

Thank you so much. God bless you

Maria Guadupe Yesenia Chavez

To Whom It May Concern,                               8/30/21

I am writing this letter to express my support for the release of Frankie Serrano #88785-008. My name is Christina Guerrero his wife and soild support system.

Frankie acknowledges his mistakes and is remorseful for his past crimes. He has served more than 14 years of his sentance. He has completed all his programs, educational requirments and has shown good behavior. Frankie has served more than the adequate time for his crime, therefore it is time to restore Frankie back to his family and to his community. Allowing Frankie to work. raise his children, pay taxes and support his family while sparing tax payers the unnecessary $40,000 annual lost to incarcerate him.

Frankie needs to be actively engaged and physically present to support and. interact with his family. As the world is changing every day and dealing with our new norm way of living with the Covid 19 virus. We are at risk every day not guarantee time with our love ones. The emoitional and financial hardships take a toll on everyone. Frankie is a loving, caring hard-working man, our family is in need with his abilities to protect and support his family. It has been a hard road, having The Good Lord in our lives has giving us the strenth and faith to keep

our family united. I am pleading for counsel to properly speak in our behalf. I am willing to provide you with anything that will help with his case and for you to decide to take this case.

I would like to thank you in advance for your time to read to our pleads and find it in your hearts to unit our family once again.

Thank You,
Christine &
Serrano Family!

chris cguerrero2024@gmail.com
915-273-7308

Christine Sessums
1551 Raphael Cir
El Paso, TX 79936

   

FILED _____ LODGED
RECEIVED _____ COPY

OCT 08 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

 

Clerk United States District Court
Sandra Day O'Connor US, Court house, Suite 130
401 W. Washington St. spc-1
Phoenix, AZ 85003-2118